**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JAMES RICHARD HILL, III,** individually, and on behalf of all others similarly situated, and on behalf of the Plan. <br><br> **Plaintiff,** <br><br> v. <br><br> **XPO, INC. and GXO LOGISTICS, INC.,** <br><br> **Defendants.** | **Case No.: 3:24-cv-01697-SFR** |

**FIRST AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT**

Plaintiff James Richard Hill, III ("Plaintiff") brings this class and representative action complaint against XPO, Inc. and GXO Logistics, Inc. ("Defendants"), on behalf of himself, all others similarly situated, and the Plan. Plaintiff makes the following allegations based upon personal knowledge as to his own actions and upon information and belief as to all other matters.

**NATURE OF THE ACTION**

1.    XPO, Inc. is a company headquartered in Greenwich, Connecticut that provides a wide range of transportation services, warehousing, and third-party logistics services worldwide. In August 2021, XPO spun off its then-existing contracts logistics business into a separate company, GXO Logistics, Inc.  GXO, like XPO, remains headquartered in Greenwich, Connecticut and operates a global logistics company.

2.    At all times relevant to this suit, all regular employees in the United States and eligible dependents can receive health insurance coverage by participating in a medical plan sponsored and administered by XPO (and now GXO as well).

3.      For those employees and their dependents to participate in these plans, they must declare whether they are a tobacco user.  Those who do use tobacco products are required to pay an additional fee of $100 per month—or $1,200 per year—to maintain coverage.

4.      Fees of this sort, frequently referred to as "tobacco surcharges", have proliferated in recent years. However, to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act (ERISA), applied to medical plans by the Patient Protection and Affordable Care Act, and implementing regulations. Defendants did not do so, and therefore collected the tobacco surcharge in violation of the law and in violation of its duties to plan participants and the plans at issue.

5.      More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a *bona fide* "wellness program". And to qualify as a compliant wellness program, a company must offer a "reasonable alternative standard", usually in the form of a tobacco cessation program, completion of which allows participants to avoid the surcharge.

6.      By law, a compliant wellness program's reasonable alternative standard must allow participants to receive the program's "full reward"; that is, avoid the surcharge for the entire plan year upon completion of the alternative standard, and must provide notice that such an alternative program exists in every communication regarding the surcharge. This notice must also include a statement that recommendations of an individual's personal physician in formulating a reasonable alternative standard will be accommodated.

7.      However, a participant in one of Defendants' plans who ceased tobacco use would only be eligible to avoid the surcharge on a going-forward basis, and thus could not earn the "full reward"—*i.e.*, avoiding the surcharge for the entire plan year. Further, Defendants' plan materials

2

used for communicating information about the surcharge with participants make no mention of an opportunity to earn the full reward for the entire plan year by completing a reasonable alternative standard, instead informing participants that successful completion of the cessation program would remove the surcharge only prospectively. And those materials do not include a disclosure that the recommendations of an individual's personal physician would be accommodated. Thus, the surcharge violates ERISA's anti-discrimination requirements, and its collection by Defendants was and remains unlawful.

8.      Plaintiff was a regular, full-time employee of Defendants who was required to pay the illegal tobacco surcharge to maintain health insurance coverage. Prior to his retirement in March 2021, he worked as a senior operations supervisor. Plaintiff brings this lawsuit on behalf of himself and all similarly situated plan participants and beneficiaries, seeking to have these unlawful fees returned, and for plan-wide relief under 29 U.S.C. § 1109.

## PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff is a citizen of the State of Arkansas. He was employed by the Defendants' enterprise for approximately sixteen years until March 2021 in the State of Tennessee.

10.      Defendant XPO, Inc. is a corporation organized under the laws of the state of Delaware and having its principal place of business in Connecticut. Its headquarters are located at Five American Lane, Greenwich, Connecticut 06831.

11.      Defendant GXO Logistics, Inc., is similarly a corporation organized under the laws of the state of Delaware and having its principal place of business in Connecticut. Its headquarters are located at Two American Lane, Greenwich, Connecticut 06831.

12.      At all times relevant to this lawsuit, Defendants operated group health plans which made health insurance coverage available to their employees and their dependents. These group

health plans are employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

13.    Defendants' group health plans both impose tobacco surcharge programs that are materially similar in all relevant respects. Upon information and belief, when GXO was spun off from XPO in August 2021, it retained the same tobacco surcharge program that XPO had enforced previously.

14.    Plaintiff was a participant in his group health plan pursuant to 29 U.S.C. § 1102(7).

15.    This Court possesses subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. This Court also possesses subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (3) Defendants and at least one class member are citizens of different states, and/or are a citizen or subject of a foreign state, and at least one class member is a citizen of a state.

16.    This Court possesses personal jurisdiction over Defendants in this case because their principal place of business is in Connecticut and are thus "at home" within the state. Additionally, the claims of Plaintiff and all others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff within the state of Connecticut, and Defendants have purposefully availed themselves of the privilege of conducting business within the state of Connecticut. Further, ERISA authorizes nationwide service of process. 29 U.S.C. § 1132(e)(2).

17. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because this is the District where Defendants administer and sponsor their group health plans and where Defendants' unlawful acts occurred.

18. Defendants are represented by counsel in this lawsuit and can be served with this First Amended Complaint through its counsel of record.

## FACTUAL ALLEGATIONS

**a. Defendants' Tobacco Surcharge is a *Prima Facie* Violation of ERISA's Anti-Discrimination Rule.**

19. As a baseline rule, and to broaden access to affordable health insurance coverage, the Patient Protection and Affordable Care Act amended ERISA to prohibit any health insurer or medical plan from discriminating against any participant in providing coverage or charging premiums based on a "health status-related factor", including the use of tobacco. Pursuant to this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

20. On its face, Defendants' tobacco surcharge programs violate this provision. Plaintiff and all others similarly situated were, at all times relevant, required to pay an additional "premium or contribution" of $100 per month, or $1,200 per year, based on a "health status-related factor", that being their use of tobacco products.

21. Specifically, at all times relevant to this lawsuit, pursuant to Defendants' enrollment rules for the respective plans, any employee or covered dependent who used any tobacco products

were required to declare themselves to be tobacco users as part of the enrollment process and were subsequently required to pay the tobacco surcharge to maintain coverage.

22.    Payment of the tobacco surcharge was required for Plaintiff and all others similarly situated to remain insured under their group health plans. Plaintiff and all others similarly situated have in fact paid the surcharge.

23.    Defendants are and have been required to make contributions to their group health plans to ensure that they remain adequately funded. By collecting the tobacco surcharge, Defendants have reduced the amount of their own contributions, thereby increasing their profits.

24.    At all times relevant to this lawsuit, Defendants have maintained sole control of their respective tobacco surcharge program, including by determining which participants are required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharge, and determining which employees (if any) are reimbursed for their payment of the tobacco surcharge.

### b. Defendants Cannot Avail Themselves to ERISA's Safe Harbor for Wellness Programs.

24.    As an exception to its anti-discrimination rule, ERISA carves out protection for "programs of health promotion and disease prevention", also known as "wellness programs."  29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

25.    To qualify as a lawful wellness program, a plan must fully comply with a set of statutory and regulatory requirements. Those requirements concern (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) notice of the availability of a reasonable alternative standard. 29 C.F.R. § 2590.702(f). These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a

claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added). Every one of the requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

26.    Defendants' tobacco surcharge programs did not and do not satisfy the requirements that they provide a reasonable alternative standard, nor do they provide notice of a reasonable alternative standard. As a result, they cannot meet each element of their affirmative defense.

27.    Consequently, Defendants are not entitled to safe harbor protection for operating a compliant wellness program and their assessment of the tobacco surcharge fees constitutes unlawful discrimination based on a health status-related factor.

### c. Defendants' Tobacco Surcharge Programs Did Not Provide for a Reasonable Alternative Standard

28.    *First*, by law, a tobacco surcharge is an example of an "outcome-based" and "health contingent" wellness program. 78 Fed. Reg. 33158 at 33161 ("An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking . . .) in order to obtain a reward."); *see also id*. at 33159 ("Examples of health-contingent wellness programs in the proposed regulations included a program that imposes a premium surcharge based on tobacco use").

29.    To be lawful, such a program must provide for "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). "[A] reasonable alternative standard must be provided to all individuals who do not meet the initial standard, to ensure that

the program is reasonably designed to improve health and is not a subterfuge for underwriting or reducing benefits based on health status." 78 Fed. Reg. 33158 at 33160.

30.    A common means by which plan administrators attempt to provide a reasonable alternative standard to a tobacco surcharge is to permit participants to avoid the surcharge by completing a tobacco cessation program.

31.    For a putative alternative standard (such as attending a tobacco cessation program) to be deemed "reasonable" under the law, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Thus, a participant who meets the alternative standard must be eligible to avoid the surcharge in its entirety for a given plan year.

32.    The applicable regulatory guidelines state that "while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, *the plan or issuer must provide the premium discounts for January, February, and March to that individual*.) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the *individual receives the full amount of the reward*." 78 Fed. Reg. 33158 at 33163 (emphasis added).

33.    However, an employee of Defendants who completed the alternative standard during a given plan year would not be eligible to avoid the entire $1,200 tobacco surcharge.

Instead, he or she could avoid the surcharge on a going-forward basis only and would not be eligible to receive a reimbursement for surcharge payments already made in that plan year.

34.     Specifically, XPO group health plan materials state that participants and beneficiaries who complete the tobacco cessation program "can have this surcharge removed for the remainder of the year."

## Tobacco Surcharge

If you are a tobacco user, you are required to pay a tobacco surcharge of $100 per month in addition to the medical plan cost. If you complete the FREE tobacco cessation program through Anthem, you can have this surcharge removed for the remainder of the year.

35.     GXO group health plan materials likewise contain the same statement, providing that participants and beneficiaries who complete the tobacco cessation program "can have this surcharge removed for the remainder of the year."

## Tobacco surcharge

If you're a tobacco user, you must pay a tobacco surcharge of **$100** per month in addition to the medical plan cost. If you complete the FREE tobacco cessation program through Anthem, you can have this surcharge removed for the remainder of the year.

36.     Because participants and beneficiaries enrolled in these plans could not receive a retroactive reimbursement to avoid the tobacco surcharge in its entirety, Defendants do not permit participants to receive the "full reward" and therefore does not provide for a "reasonable alternative standard."

9

**d. Defendants Failed to Provide Notice of Availability of a Reasonable Alternative Standard**

37.    *Second*, to be deemed a lawful wellness program, "[t]he plan or issuer must disclose *in all plan materials describing the terms of an outcome-based wellness program* . . . the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702 (emphasis added); 42 U.S.C. § 300gg-4(j)(3)(E). "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01 at 33166.

38.    Defendants' plan materials discussing their tobacco surcharge fees do not disclose the existence of a reasonable alternative standard.

39.    As alleged further herein, Defendants' plans' written materials fail to disclose that a participant who completed the cessation program would be eligible for retroactive reimbursement for surcharge payments made during that plan year, and thus eligible to receive the "full reward." Indeed, to the contrary, the relevant written materials notify participants and beneficiaries that upon successful completion of the tobacco cessation program, they can have the surcharge removed "for the remainder of the year" only.

40.    *Third*, under the applicable regulations, "[t]he plan or issuer must disclose in all plan materials describing the terms of an activity-only wellness program . . . contact information for obtaining a reasonable alternative standard and a *statement that recommendations of an individual's personal physician will be accommodated*. 29 C.F.R. § 2590.702(f)(4)(v).

41.    The foregoing plan materials cited *infra* do not include a statement that the recommendations of an individual's physician will be accommodated. Upon information and belief, none of Defendants' other written Plan materials referencing the tobacco surcharge include this disclosure either.

42.     Defendants, then, have not complied with the requirement that they provide notice of the availability of a reasonable alternative standard by which a plan participant could avoid the tobacco surcharge and receive the full reward, or that the recommendations of his or her personal physician would be accommodated. Defendants cannot then avail themselves of the regulatory safe harbor for operating a lawful wellness program.

### e.  Additionally, Defendants Violated the Terms of the Plans

43.     In addition to the foregoing statutory violations, Defendants also violated the terms of the binding Plan Documents in implementing and assessing their tobacco surcharges.

44.     Both the XPO Plan Document and the GXO Plan Document state that "[t]he Plan shall comply with all applicable nondiscrimination rules under the Code." XPO Plan Document, § 9.15; GXO Plan Document, § 9.14. They in turn define the "Code" to mean "the Internal Revenue Code of 1986 as amended and including all regulations promulgated pursuant thereto." XPO Plan Document, § 1.11; GXO Plan Document, § 1.9.

45.     The Internal Revenue Code prohibits group health plans from discriminating based on a health status-related factor in 26 U.S.C. § 9802—an enactment nearly identical to 29 U.S.C. § 1182. Further, 29 C.F.R. § 2590.702, which sets out the requirements of a lawful wellness program, is a regulation promulgated pursuant to the Internal Revenue Code. *See, e.g.*, 78 Fed. Reg. 33158 at 33175 (citing the Code as statutory authority for regulation); *id*. at 33158 ("The Affordable Care Act adds section 715(a)(1) to the Employee Retirement Income Security Act (ERISA) and section 9815(a)(1) to the Internal Revenue Code (the Code) to incorporate the provisions of part A of title XXVII of the PHS Act into ERISA and the Code, and to make them applicable to group health plans and health insurance issuers providing health insurance coverage in connection with group health plans.").    46.     These provisions  thus qualify as "applicable

11

nondiscrimination rules." *See* 26 U.S.C. § 9802 ("*Prohibiting discrimination* against individual participants and beneficiaries based on health status") (emphasis added); 78 Fed. Reg. 33158 at 33158 ("This document contains final regulations, consistent with the Affordable Care Act, regarding nondiscriminatory wellness programs in group health coverage.").

47.    Defendants violated these rules, as alleged extensively herein, by imposing a tobacco surcharge without providing for a reasonable alternative standard. In so doing, Defendants have violated the terms of the plans.

## CLASS ACTION ALLEGATIONS

48.    Class Definition: Plaintiff brings this action individually and on behalf of all other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(1)(B), 23(b)(2), and/or 23(c)(4), Plaintiff seeks certification of a class consisting of:

> All individuals within the United States who paid XPO and/or GXO's tobacco surcharge at any time within the relevant limitations period.

49.    Excluded from the Class are the Court and its officers, employees, and relatives; Defendants and their subsidiaries, officers, and directors; and governmental entities.

50.    Numerosity: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Defendants employ tens of thousands of similarly situated individuals across the United States.

51.    All members of the Class are ascertainable by reference to objective criteria, as Defendants have access to addresses and other contact information for Class members that can be used for notice purposes.

52.    Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Indeed, the claims of *every* class

member will rise or fall on the question of whether the tobacco surcharge is compliant with all legal requirements, and therefore lawful.  Common questions include:

    a.  Whether Defendants' tobacco surcharge discriminates against their group health plans' participants and beneficiaries based on a health status-related factor;

    b.  Whether Defendants' tobacco surcharge programs qualify for statutory safe harbor protection as a compliant wellness program;

    c.  Whether Defendants can meet every element of their statutory affirmative defense for operating a compliant wellness program;

    d.  Whether Defendants would allow a participant to be retroactively reimbursed for surcharge payments previously made in a given plan year;

    e.  Whether all of Defendants' group health plans' materials describing the tobacco surcharge give notice of a reasonable alternative standard by which a plan participant or beneficiary may receive the full reward;

    f.  Whether a plan document that describes the tobacco surcharge but does not disclose an alternative program by which a participant can earn the full reward for the plan year gives notice of a reasonable alternative standard;

    g.  Whether a plan document that describes the tobacco surcharge but does not disclose a statement that recommendations of an individual's personal physician will be accommodated gives notice of a reasonable alternative standard;

    h.  Whether Defendants' tobacco surcharge fees violate the law; and

    i.  Whether Defendants breached their fiduciary duties with respect to their collection and retention of the tobacco surcharge funds.

53.    <u>Typicality</u>: Plaintiff's claims are typical of other members of the Class because all the claims arise from the same course of conduct by Defendants—their collection of an unlawful surcharge—and are based on the same legal theories.

54.    <u>Adequacy of Representation</u>: Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class members whom he seeks to represent.

Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

55.     Superiority of Class Action: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

56.     To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

**COUNT I – ERISA STATUTORY VIOLATION**
**Unlawful Surcharge – Failure to Provide a Reasonable Alternative Standard**
*By Plaintiff and the Class Against Defendants Under ERISA § 502(a)(3)*

57.     Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

58.     To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $100 per month, or $1,200 per year.

59.     Defendants' tobacco surcharges are not and were not permissible wellness programs, because they did not provide for a reasonable alternative standard, in that a tobacco user who completed the designated tobacco cessation program would not be reimbursed for surcharge payments already made during that plan year, and thus would not be eligible to receive the "full

reward" of the tobacco surcharge program, that being a $1,200 reduction in premium costs to maintain medical coverage.

60.     Defendants cannot meet every element of their affirmative defense for operating a lawful, compliant wellness program, and are therefore not entitled to statutory safe harbor protection.

61.     Defendants' tobacco surcharge has discriminated against, and continues to discriminate against, participant and beneficiaries enrolled in their group health plans based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

62.     29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

63.     Plaintiff and class members were required to pay an illegal fee, and Defendants collected that fee from them in violation of the law. Equity requires that those funds be returned.

**COUNT II – ERISA STATUTORY VIOLATION**
**Unlawful Surcharge – Failure to Provide Required Notice**
*By Plaintiff and the Class Against Defendants Under ERISA § 502(a)(3)*

64.     Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

65.     To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $100 per month, or $1,200 per year.

66.     Defendants' tobacco surcharges are not and were not a permissible wellness program, because Defendants did not give statutorily required notice of reasonable alternative standard, in that:

> a.  Their plans' written materials discussed the tobacco surcharge, but did not notify participants and beneficiaries that they would be eligible to receive the

15

full reward of the tobacco surcharge program for the plan year, including the retroactive reimbursement of any surcharge fees already paid that plan year, but instead informed them that they would have the surcharge removed on a going-forward basis only; and

b. Their plans' written materials discussed the tobacco surcharge but did not include a statement that recommendations of an individual's personal physician will be accommodated in conjunction with the formation of a reasonable alternative standard.

67. Defendants cannot meet every element of their affirmative defense for operating a lawful, compliant wellness program, and are therefore not entitled to statutory safe harbor protection.

68. Defendants' tobacco surcharges have discriminated against, and continue to discriminate against, plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

69. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

70. Plaintiff and class members were required to pay an illegal fee, and Defendants collected that fee from them in violation of the law. Equity requires that those funds be returned.

## COUNT III – ERISA BREACH OF FIDUCIARY DUTY
### 29 U.S.C. § 1109
*By Plaintiff and the Class, On Behalf of Defendants' Group Health Plans Against Defendants*

71. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

72. At all times relevant to this lawsuit, Defendants were the administrators of their respective group health plans within the meaning of 29 U.S.C. § 1002(16) and were fiduciaries within the meaning of 29 U.S.C. § 1002(21), in that they exercised discretionary authority and discretionary control respecting management of their group health plans and disposition of their

16

assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of their plans.

73.    Defendants breached their fiduciary duties by assessing and collecting the tobacco surcharges in violation of the law and in violation of the relevant plan terms, as the receipt of additional funds reduced their own costs associated with funding their plans and forestalled their own obligations to make contributions thereto.

74.    Upon information and belief, Defendants' responsibilities with respect to the funding of their plans' claims and administrative expenses relating to their plans' self-funded arrangements equaled the amount by which their plans' claims and administrative expenses exceeded all participant contributions, including the tobacco surcharge funds, Defendants' collection of the tobacco surcharge funds diminished the amount they had to contribute to the plan, thereby benefiting themselves and harming their plans.

75.    As a result of the imposition of the tobacco surcharges, Defendants enriched themselves at the expense of their plans, thereby resulting in them receiving a windfall.

76.    Defendants breached their fiduciary duties under ERISA in that they:

a.    failed to act solely in the interest of the participants and beneficiaries of their plans and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

b.    failed to discharge their duties in accordance with the documents and instruments governing their plans insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

c.    caused their plans to engage in transactions that Defendants knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of their group health plans, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

d.    dealt with assets of their plans in Defendants' own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

17

e.  acted on behalf of a party whose interests were averse to the interests of their plans or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

f.  caused their plans to require participants to pay premiums or contributions which were greater than such premiums or contributions for a similarly situated participant enrolled said group health plans on the basis of a health status-related factor in relation to the participant or beneficiary in violation of ERISA. *See* 29 U.S.C. § 1182(b).

77.     As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Defendants are liable to make good to the plan all losses to their group health plans resulting from their breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plans and/or a constructive trust all profits they acquired through their violations alleged herein and which they made through use of assets of their plans, and for such other equitable or remedial relief as is proper.

78.     Plaintiff is authorized to bring this action on behalf of the plans pursuant to 29 U.S.C. § 1132(a)(2).

## COUNT IV – ERISA BREACH OF FIDUCIARY DUTY
### Individual Relief for Fiduciary Violations
*By Plaintiff and the Class Against Defendants Under ERISA § 502(a)(3)*

79.     Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

80.     At all times relevant to this lawsuit, Defendants were the administrators of their respective group health plans within the meaning of 29 U.S.C. § 1002(16) and were fiduciaries within the meaning of 29 U.S.C. § 1002(21), in that they exercised discretionary authority and discretionary control respecting management of their group health plans and disposition of their assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of their plans.

81.    Defendants breached their fiduciary duties by assessing and collecting the tobacco surcharges in violation of the law and in violation of the relevant plan terms, as the receipt of additional funds reduced their own costs associated with funding their plans and forestalled their own obligations to make contributions thereto.

82.    Upon information and belief, because Defendants' responsibilities with respect to the funding of their plans' claims and administrative expenses relating to their plans' self-funded arrangements equaled the amount by which their plans' claims and administrative expenses exceeded all participant contributions, including the tobacco surcharge funds, Defendants' collection of the tobacco surcharge funds diminished the amount they had to contribute to the plan, thereby benefiting themselves and harming their plans.

83.    As a result of the imposition of the tobacco surcharges, Defendants enriched themselves at the expense of their plans, thereby resulting in them receiving a windfall.

84.    Defendants breached their fiduciary duties under ERISA in that they:

   a.  failed to act solely in the interest of the participants and beneficiaries of their plans and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

   b.  failed to discharge their duties in accordance with the documents and instruments governing their plans insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

   c.  caused their plans to engage in transactions that Defendants knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of their group health plans, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

   d.  dealt with assets of their plans in Defendants' own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

   e.  acted on behalf of a party whose interests were averse to the interests of their plans or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

    f.   caused their plans to require participants to pay premiums or contributions which were greater than such premiums or contributions for a similarly situated participant enrolled said group health plans on the basis of a health status-related factor in relation to the participant or beneficiary in violation of ERISA. *See* 29 U.S.C. § 1182(b).

85.    Plaintiff and class members are authorized to recover individual equitable relief to remedy these breaches under 29 U.S.C. § 1132(a)(3).

<u>**COUNT V – ERISA VIOLATION**</u>
**Violation of Plan Terms**
*By Plaintiff and the Class Against Defendants Under ERISA § 502(a)(3)*

86.    Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

87.    Defendants violated the terms of their Plans, as set out in their respective Plan Documents, for the reasons alleged *supra* at ¶¶ 43-47.

88.    As a result of these violations, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $100 per month, or $1,200 per year.

89.    Plaintiff and class members are authorized to recover individual equitable relief to remedy these violations of the terms of the Plans under 29 U.S.C. § 1132(a)(3).

<u>**REQUEST FOR RELIEF**</u>

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

A.  That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

B.  That the Court order Defendants to reimburse all persons who paid the tobacco surcharge within the relevant limitations period;

C. That the Court order disgorgement and/or restitution of all payments unlawfully assessed by Defendants, or, alternatively, the profits earned by Defendants in connection with their receipt of such unlawful fees;

D. That the Court grant a declaratory judgment holding that the acts of Defendants described herein violate ERISA and applicable law, as well as the terms of their plans;

E. That the Court enter a permanent injunction against Defendants prohibiting them from collecting tobacco surcharge funds unless and until they revise their surcharges to comply with all ERISA statutory requirements;

F. That the Court order Defendants to provide all accountings necessary to determine the amounts it must make good to their plans and to plan participants and beneficiaries;

G. That the Court surcharge against Defendants all funds it collected in violation of ERISA and the terms of the plan;

H. That the Court find and adjudge that Defendants are liable to make good to their plans all losses to those plans resulting from each breach of their fiduciary duties, to otherwise restore the plans to the positions they would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciaries;

I. That the Court impose a constructive trust on profits received by Defendants as a result of fiduciary breaches committed by them or for which they are liable, upon which Plaintiff and the class can make claims for equitably vested benefits;

J. That the Court award Plaintiff and the class all damages available at law in an amount to be determined at trial;

K.  That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

L.  That the Court order the payment of interest to the extent it is allowed by law; and

M.  That the Court grant all other equitable, remedial, and legal relief as it deems just and proper under the circumstances.

Dated: February 21, 2025                         Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson
Alexander T. Ricke
Caleb J. Wagner
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    (816) 714-7100
Facsimile:    (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone:    (816) 781-0002
Facsimile:    (816) 781-1984
ryan@mcclellandlawfirm.com

**MADSEN PRESLEY & PARENTEAU, LLC**
William G. Madsen (ct09853)
402 Asylum Street
Hartford, CT 06103
Telephone: 860-246-2466
Facsimile: 860-246-1794
Email: wmadsen@mppjustice.com

*Attorneys for Plaintiff*

22