UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

JAMES RICHARD HILL, III,                          :
                                                  :
                              Plaintiff,          :
                                                  :
            v.                                    :        24-CV-1697 (SFR)
                                                  :
XPO, INC. and GXO LOGISTICS, INC.,                :
                                                  :
                              Defendants.         :
---------------------------------------------------------------- x

**MEMORANDUM & ORDER**

Plaintiff Richard Hill filed a Class Action Complaint under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against his former employer XPO, Inc. ("XPO") and its subsidiary, GXO Logistics, Inc. ("GXO," and collectively "Defendants"). Hill challenges a provision within the health insurance plans (the "Plans") sponsored by Defendants that require tobacco users to pay an additional premium (the "tobacco surcharge") as a condition of enrollment.

Defendants move to dismiss, arguing that all claims in the First Amended Complaint fail to state a claim. For the reasons stated below, the Motion to Dismiss (ECF No. 47) is granted in part and denied in part.

I.      **BACKGROUND**

        A.      **Factual Background**

The following facts from the First Amended Complaint ("FAC"), ECF No. 46, are accepted as true for purposes of this ruling.

XPO offers "transportation services, warehousing, and third-party logistics services worldwide." FAC ¶ 1, ECF No. 46. "In August 2021, XPO spun off its then-existing contracts

1

logistics business into a separate company, GXO Logistics, Inc." *Id.* Hill was employed by XPO until March 2021. *Id.* ¶ 9. Although Hill left XPO before the founding of GXO, the FAC asserts claims against both Defendants. *See id.* ¶ 1.

Defendants sponsor and administer medical plans (the "Plans") for their employees and eligible dependents to receive health insurance coverage. *Id.* ¶ 2. The Plans require members to declare whether they use tobacco. *Id.* ¶ 3. Members who use tobacco products must pay an additional $100 fee (the "tobacco surcharge") per month to maintain coverage. *Id.* ¶¶ 3, 22. Hill paid the tobacco surcharge and continued to pay the surcharge while employed by Defendants. *Id.* ¶ 22.

Members can avoid paying this fee by participating in a tobacco cessation program. *Id.* ¶ 34. Defendants' plan materials state that members who completed the tobacco cessation program were entitled to "have this surcharge removed for the remainder of the year." *Id.* ¶ 34. But the tobacco surcharge is not removed retroactively; thus, any payments assessed for the calendar year are not refunded to members. *Id.* ¶ 33. Moreover, the Plans' materials fail to "include a statement that the recommendations of an individual's physician will be accommodated." *Id.* ¶ 41.

The FAC states that the Plans contain a guarantee that they will "comply with all applicable nondiscrimination rules under the Code." *Id.* ¶ 44.[1] The Plans define "Code" as "the Internal Revenue Code of 1986 as amended and including all regulations promulgated pursuant thereto." *Id.* ¶ 44.

---

[1] Defendants attach the GXO Benefit Plan and the XPO Benefit Plan to their briefing. GXO Plan, ECF No. 47-3; XPO Plan, ECF No. 47-4.

### B.    Procedural History

Hill initiated the present action by filing a Class Action Complaint on October 23, 2024. ECF No. 1. Following service, Defendants moved to dismiss on January 21, 2025. ECF No. 41. Hill responded by amending as of right. First Am. Class & Rep. Action Compl. ("FAC"), ECF No. 46. I therefore denied as moot Defendants' Motion to Dismiss directed at the prior version of the Complaint. ECF No. 58.

Defendants renewed their Motion to Dismiss on March 7, 2025. Defs.' Mot. to Dismiss Pl.'s First Am. Class Action Compl., ECF No. 47; Mem. of L in Supp. of Defs.' Mot. to Dismiss (Defs.' Mem."), ECF No. 47-1. Hill responded in opposition on April 7, 2025. Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl.'s Mem."), ECF No. 52. Defendants replied on April 28, 2025. Defs.' Reply in Supp. of Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 57. Over Hill's opposition, I stayed discovery during the pendency of the Motion to Dismiss. ECF No. 59. The parties have filed several Notices of Supplemental Authority during the pendency of the Motion to Dismiss. ECF Nos. 60, 61, 65, 71-81.

## II.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept

"conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III.    **DISCUSSION**

Defendants contend that all five Counts are untimely. In particular, they argue that Counts One, Two, Four, and Five are subject to a one-year statute of limitations by virtue of a Delaware choice-of-law provision contained within the Plans. Defs.' Mem. 12-15, 20-21.[2] Defendants also argue that Count Three is untimely, and in any case fails to state a claim. *Id.* at 16-20. I begin by analyzing whether Counts One, Two, Four, and Five are timely. I then analyze whether Count Three is timely, and whether it states a claim.

### A.    **Statutory Framework**

ERISA is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361 (1980), characterized by its "interlocking, interrelated, and interdependent remedial scheme," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). I therefore start by setting forth the substantive provisions and enforcement mechanisms within ERISA that are relevant to the present action.

#### 1.    **ERISA Substantive Provisions**

##### a.    **Fiduciary Duty**

ERISA § 409 provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have

---

[2] I cite throughout to the pagination set by ECF rather than any internal numbering system contained within the parties' submissions.

been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

### b.    ERISA's Anti-Discrimination Provisions

"In 1996, the Health Insurance Portability and Accountability Act added Section 702 [29 U.S.C. § 1182] to ERISA." *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 900 (C.D. Ill. 2025). ERISA § 702 provides that a group health plan "may not establish rules for eligibility" or require any individual to a pay health plan premium greater than that of a similarly situated individual enrolled in the plan based on any medical condition or health status-related factor. 29 U.S.C. § 1182(a)(1). Nonetheless, this prohibition is subject to a critical exception: the plan may "establish[] premium discounts or rebates or modify[] otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention," also known as wellness programs. *Id.* § 1182(b)(2)(B).

The Patient Protection and Affordable Care Act ("ACA") further modified ERISA § 702 by permitting plans to impose surcharges where the plan permits members to complete a "wellness program" in order to obtain a premium discount. *Bueschler*, 791 F. Supp. 3d at 900 (describing the legislative history of ERISA § 702); 42 U.S.C. § 300gg-4(j) (setting forth the requirements for "wellness programs"). In 2014, the Department of Labor promulgated regulations that offer additional guidance for "nondiscriminatory wellness programs." 29 C.F.R. § 2590.702(f).

### 2.    Civil Enforcement Mechanisms

ERISA § 502, captioned "Civil enforcement," provides a private cause of action for claims arising under ERISA. 29 U.S.C. § 1132. In relevant part, ERISA § 502(a)(1)(B) allows

"a participant or beneficiary" to bring a claim "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

ERISA § 502(a)(2) authorizes suit by "a participant . . . for appropriate relief under section 1109 of this title." *Id.* § 1132(a)(2). A claim pursuant to ERISA § 502(a)(2) is brought in a representative capacity, on behalf of the Plan. "In *Russell*, the Supreme Court concluded that Section 502(a)(2) claims can only be brought to pursue relief on behalf of a plan, and cannot be used as a mechanism to seek individual equitable relief for losses arising from the mismanagement of a plan." *Cedeno v. Sasson*, 100 F.4th 386, 396-97 (2d Cir. 2024) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 (1985)). "For relief from genuinely personal injuries, participants must instead turn to Section 502(a)(3), which authorizes individual equitable relief regardless of the whether the plan has also suffered." *Duke v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16, 27 (2d Cir. 2026).

ERISA § 502(a)(3) authorizes suit "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3).

### 3.    Claims in the First Amended Complaint

The FAC asserts five claims under ERISA. Counts One, Two, Four, and Five are brought under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Count One contends that Defendants violated ERISA because participants in the Plan's tobacco cessation program were not eligible for reimbursement for "surcharge payments already made during the plan year." FAC ¶¶ 57-63. Count Two alleges that Defendants violated ERISA because they failed to

6

provide statutorily required notice of the tobacco cessation program. *Id.* ¶¶ 64-70. Count Four accuses Defendants of breaching their fiduciary duties by applying surcharge funds to "diminish[] the amount they had to contribute to the plan." *Id.* ¶¶ 79-85. Count Five alleges that Defendants violated the Plan terms by discriminating based on health status. *Id.* ¶¶ 86-89.

Count Three is brought in a representational capacity on behalf of the Plans under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). Count Three asserts that Defendants breached their fiduciary duties by "assessing and collecting the tobacco surcharges in violation of the law and in violation of the relevant plan terms." *Id.* ¶¶ 71-78. In particular, Count Three maintains that Defendants applied tobacco surcharge funds in order to "diminish[] the amount they had to contribute to the plan, thereby benefiting themselves and harming their plans." *Id.* ¶ 74.

## B.    Statute of Limitations

ERISA specifies a limitation period only "with respect to a fiduciary's breach of any responsibility, duty, or obligation." ERISA § 413, 29 U.S.C. § 1113. ERISA is otherwise silent as to the applicable limitations period for other claims. *Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 132 (2d Cir. 2021) (stating that "Federal law supplies no limitations period" for ERISA § 502(a)(3) claims); ERISA Prac. & Proc. § 8:72 (Ronald J. Cooke ed. 2025) ("With the exception of actions brought for breach of fiduciary obligation and actions under the special provisions relative to multi-employer plans, ERISA does not provide a limitations period and, specifically, does not specify a statute of limitations for actions seeking benefits.").

The parties agree that ERISA § 413 supplies the limitations period for Count Three, which alleges that Defendants breached their fiduciary duties. Defs.' Mem. 16-17; Pl.'s Mem.

7

19-20. But the parties disagree about the relevant limitations period for all remaining Counts. Defendants contend that state law supplies the limitations period for Counts One, Two, Four, and Five. Hill contends that the federal catchall limitation period in 28 U.S.C. § 1658 supplies the limitations period for Counts One, Two, and Five, and that ERISA § 413 supplies the limitation period for Count Four. As I explain below, I agree that § 1658 supplies the limitation period for Counts One and Two and that ERISA § 413 applies to Count Four. But I conclude that state law supplies the limitation period relevant to Count Five.

### 1. The Federal Catchall Statute of Limitations

Pursuant to 28 U.S.C. § 1658, "a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues."

"In 1990, Congress enacted Section 1658 to simplify the previously arduous task of determining which limitations period to apply to an 'Act of Congress' that did not contain a statute of limitations." *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 63-64 (2d Cir. 2021) (quoting 28 U.S.C. § 1658). "The Supreme Court has interpreted Section 1658's 'arising under' language broadly, stating '[t]he history that led to the enactment of § 1658 strongly supports an interpretation that fills more rather than less of the void that has created so much unnecessary work for federal judges.'" *Id.* at 64 (quoting *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 380 (2004)). In *Jones*, the Court analyzed the statute of limitations that should apply to claims brought pursuant to 42 U.S.C. § 1981, which although first enacted in 1866 had been amended in 1991 to broaden its protections. 541 U.S. at 373. The Court held that a "cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and

8

therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones*, 541 U.S. at 382.

As the *Jones* Court explained, "Congress routinely creates new rights of action by amending existing statutes" and "[n]othing in the text or history of § 1658 supports an interpretation that would limit its reach to entirely new sections of the United States Code." *Id.* at 381. Thus, "[w]hat matters is the substantive effect of an enactment—the creation of new rights of action and corresponding liabilities—not the format in which it appears in the Code." *Id*. The Court observed that this construction also attended to Congress's desire to protect settled expectations: even where Congress amended a statute post-1990, state law would continue to supply the limitations period if a "plaintiff's claim would have been available— and subject to a state statute of limitations—prior to December 1, 1990." *Id.* at 381. Applying this rule, the Court resolved that the petitioners' § 1981 claim was subject to the catchall limitations period under § 1658 because the petitioners alleged that respondent engaged in conduct that would not have been unlawful under the pre-1990 version of § 1981. *Id.* at 383.

Similarly, in *Vega-Ruiz*, the Second Circuit analyzed whether the plaintiff's disability discrimination claim under the Rehabilitation Act was subject to § 1658's catchall limitations period. 992 F.3d at 64. The Second Circuit concluded that § 1658 supplied the limitations period because the plaintiff's claim implicated conduct that was not unlawful until the enactment of the ACA. *Id.* at 66. The Court explained: "[B]ecause the ACA changed [defendant's] obligation in this context . . . [w]e therefore must look to Section 1658 and apply a four-year statute of limitations period." *Id*.

9

### 2.    Counts One and Two

As noted, Counts One and Two, which are brought under ERISA § 502(a)(3), seek to vindicate a direct statutory violation of ERISA § 702. FAC ¶¶ 57-70. Counts One and Two allege that Defendants imposed tobacco surcharges even though Defendants' wellness programs (1) the Plans declined to reimburse members for payments made in the calendar year leading up to the date they completed a tobacco cessation program and (2) the Plans' written materials failed to notify members that the tobacco cessation program would be structured consistent with the recommendations of each member's treating physician. *Id.* ¶¶ 59, 66.

Defendants argue Counts One and Two are untimely. Defs.' Mem. 12-15. Hill responds that Counts One and Two are governed by the four-year catchall limitations period set forth in 29 U.S.C. § 1658. Pl.'s Mem. 15-19. This appears to present an issue of first impression. The parties have not identified—nor has my research uncovered—any examples of courts analyzing the statute of limitations period that should apply to an ERISA § 702 claim brought pursuant to ERISA § 502(a)(3).[3]

Applying *Jones* to this question, it is plainly evident that Counts One and Two were made possible by post-1990 enactments. Although ERISA's private cause of action has existed since 1974, § 1658 nonetheless supplies the limitations period because Counts One and Two focus on conduct that was not prohibited under the version of ERISA that existed prior to

---

[3] The numerous cases identified by Defendants where courts apply the state-law limitations period to denial-of-benefit claims are inapposite because they confronted claims that were available before the 1990 amendments. *See, e.g.*, *Prabhakar v. Life Ins. Co. of N. Am.*, 996 F. Supp. 2d 124, 138 n.20 (E.D.N.Y. 2013) (analyzing statute of limitations set by forum designated in choice-of-law provision for purposes of resolving denial-of-benefit claim), *aff'd*, 588 F. App'x 8 (2d Cir. 2014); *Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, No. 97 CV 6612(SJ), 2005 WL 3775953, at *11 (E.D.N.Y. Dec. 24, 2005) (ERISA § 107); *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 n.2 (3d Cir. 2007) (denial of benefits).

December 1, 1990. *See Vega-Ruiz*, 992 F.3d at 66; *cf. Thompson v. Ret. Plan for Emps. of S.C. Johnson & Sons, Inc.*, 716 F. Supp. 2d 752, 762-63 (E.D. Wis. 2010) (concluding that § 1658 did not supply limitations period because post-1990 enactment did not implicate plaintiffs' claim), *aff'd*, 651 F.3d 600 (7th Cir. 2011). ERISA § 502(a)(3) provides a mechanism to enforce rights under ERISA § 702—rights made possible by Congress's decision in 1996 to enact ERISA § 702 and its substantive prohibition on discrimination on the basis of health status. *See Chambers v. N. Carolina Dep't of Just.*, 66 F.4th 139, 142 (4th Cir. 2023) (stating that "what matters for determining the proper limitations period is the substance of the underlying claim" not "the procedural vehicle for asserting an underlying claim").

I acknowledge that some decisions of the Second Circuit have indicated in general terms that state law supplies the limitations period for claims brought under ERISA § 502. In 1983, in considering a denial-of-benefits claim brought under ERISA § 502(a)(1)(B), the Second Circuit stated that, because "ERISA does not prescribe a limitations period for actions under § 1132 [ERISA § 502], the controlling limitations period is that specified in the most nearly analogous state limitations statute." *Miles v. New York State Teamsters Conf. Pension & Ret. Fund Emp. Pension Ben. Plan*, 698 F.2d 593, 598 (2d Cir. 1983). Thereafter, in another denial-of-benefits case brought under ERISA § 502(a)(1)(B), the Second Circuit said the same. *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009). I do not read these cases to hold that *all* claims brought under ERISA § 502 are governed by the analogous state-law limitations period, not least because ERISA § 413 *does* provide a limitations period for claims brought ERISA § 502(a)(2). *See, e.g.*, *Browe v. CTC Corp.*, 15 F.4th 175, 190-93 (2d Cir. 2021) (analyzing timeliness of § 502(a)(2) breach of fiduciary duty claim under ERISA § 413). I instead understand *Burke* and *Miles* to reflect the straightforward

11

(and undisputed, *see* Pl.'s Mem. 17) proposition that state law supplies the limitations period for denial-of-benefit claims because plan members have been able to challenge denial of benefits since 1974. Pl.'s Mem. 17; *see also Testa v. Becker*, 910 F.3d 677, 682 (2d Cir. 2018) (citing *Miles* and *Burke* courts for the proposition that state law supplies the limitations period for ERISA "*denial-of-benefits* claims") (emphasis added).

I therefore conclude that the federal catchall limitations period applies to Counts One and Two. Defendants do not argue that the Plans' incorporation of a Delaware choice-of-law provision would supersede or in any way modify the four-year limitations period supplied by § 1658. *See* Defs.' Mem.[4] Nor do Defendants contend that Counts One or Two are untimely under the four-year limitations period. I therefore deny the Motion to Dismiss Counts One and Two.

### 3.    Count Four

Count Four, brought pursuant to ERISA § 502(a)(3), alleges that Defendants breached their fiduciary duties. *Id.* ¶ 87. Court Four contends that Defendants failed to discharge their duties in accordance with the Plans; caused the Plans to engage in prohibited transactions; engaged in self-dealing; and caused the Plans to collect tobacco surcharges that constituted impermissible discrimination on the basis of health status. *Id.* ¶ 84. Moreover, Count Four alleges the Plans guaranteed they would comply with the Internal Revenue Code "including all regulations promulgated pursuant thereto," *id.* ¶ 44, and these regulations "prohibit[] group

---

[4] The choice-of-law provisions in the Plans, ECF No. 47-3, at 46, and ECF No. 47-4, at 65, are discussed further as part of my analysis of the timeliness of Count Five.

12

health plans from discriminating based on a health status-related factor," *id.* (citing 29 C.F.R. § 2590.702).

Defendants argue that Count Four is "in essence" a claim "to enforce [plaintiff's] rights under the terms of the plan" under ERISA § 502(a)(1)(B), and thus subject to the same one-year statute of limitations they urge me to apply in Counts One and Two. Defs.' Mem. 20-21. Hill responds that Count Four is instead subject to the statute of limitations applicable to all ERISA fiduciary duty claims in ERISA § 413, 29 U.S.C. § 1113. Pl.'s Mem. 19-20.

Courts routinely apply the limitations periods specified in ERISA § 413 to claims such as Count Four that sound in breach of fiduciary duty for failing to administer a plan in accordance with its terms. *See, e.g.*, *Est. of Rosenberg v. Macy's, Inc.*, No. CV 20-11860-MLW, 2022 WL 4547074, at *18 (D. Mass. Sept. 29, 2022) ("There is ample authority to support application of ERISA § 413 to claims under ERISA § 502(a)(3) that . . . focus on alleged breaches of fiduciary duty."); *accord Schulman v. Herbert E. Nass & Assocs. SEP IRA Plan*, No. 10 CIV. 9613 RA, 2013 WL 4860119, at *5 (S.D.N.Y. Sept. 11, 2013). And Defendants do not identify any authority for the proposition that claims sounding in breach of fiduciary duty should be analyzed under a statute of limitations other than the limitations period set forth in ERISA § 413.[5]

---

[5] Defendants cite a concurrence authored by Chief Justice Roberts that construed the interaction between ERISA sections 502(a)(1)(B) and 502(a)(2), neither of which is at issue in this action. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 258 (2008) (Roberts, C.J., concurring in part) ("Allowing a § 502(a)(1)(B) action to be recast as one under § 502(a)(2) might permit plaintiffs to circumvent safeguards for plan administrators that have developed under § 502(a)(1)(B).").

I therefore apply the limitations period in ERISA § 413 and conclude that at least some of the conduct alleged in Count Three is timely.

ERISA § 413 specifies that:

No action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

29 U.S.C. § 1113.

ERISA § 413(1), a statute of repose, is not implicated here. Rather, Hill says that nothing on the face of the pleadings suggests that Hill had "actual knowledge" of Defendants' alleged breach more than three years prior to filing suit on October 23, 2024. Pl.'s Mem. 21; *see* 29 U.S.C. § 1113(2).

As the Supreme Court has explained, "to have 'actual knowledge' of a piece of information, one must in fact be aware of it." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 184 (2020). "'A plaintiff has actual knowledge of the breach or violation within the meaning of § 1113(2) when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act.'" *Browe v. CTC Corp.*, 15 F.4th 175, 191 (2d Cir. 2021) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001) (alterations adopted)). "Actual knowledge, however, does not include knowledge of the underlying law." *Id.* at 191. "[A] 'statute of limitations argument is an affirmative defense for which the defendant bears the burden of proof.'" *Id.* at 190 (quoting *United States v. Livecchi*, 711 F.3d 345, 352 (2d Cir. 2013) (alterations adopted)).

14

Count Four contends that Defendants breached their fiduciary duties by "diminish[ing] the amount they had to contribute to the plan, thereby benefiting themselves and harming their plans." *Id.* ¶ 82. Although the FAC states that Hill paid the tobacco surcharge until March 2021, *id.* ¶ 9, the FAC does not allege facts that would permit me to infer when Hill gained "actual knowledge" that Defendants were using tobacco surcharges to offset their own contributions to the Plans.

To be sure, Count Four also contends that Defendants breached their fiduciary duties by imposing the tobacco surcharge. *Id.* ¶ 81. Hill does not contend that he gained "actual knowledge" of this violation at any time other than when he was assessed the surcharges. *See* Pl.'s Mem. Because the FAC alleges that Hill worked at XPO until March 2021, *id.* ¶ 9, it appears that he acquired "actual knowledge" that Defendants were imposing the tobacco surcharge no later than March 2021. For that reason, Count Four is time barred to the extent it challenges Defendants' decision to impose the tobacco surcharge.

Nonetheless, because the FAC does not allege facts regarding when Hill gained actual knowledge of the manner in which Defendants offset their contributions to the Plans, I conclude that Count Four is timely.

### 4.    Count Five

Count Five, brought pursuant to ERISA § 502(a)(3), alleges that Defendants violated the terms of the Plans. FAC ¶¶ 86-89. In particular, the FAC alleges that imposing the tobacco surcharge "violated the terms of the[] Plans," *id.* ¶ 87, which guaranteed they would comply with the Internal Revenue Code "including all regulations promulgated pursuant thereto," *id.* ¶ 44. These regulations "prohibit[] group health plans from discriminating based on a health status-related factor," *id.* (citing 29 C.F.R. § 2590.702).

Defendants say that Count Five is properly understood to be a claim for benefits under ERISA § 502(a)(1)(B). Defs.' Mem. 20-21. But Defendants do not explain why classifying Count Five as arising under a different cause of action would alter the applicable statute of limitations. Accepting Hill's argument that Count Five is rightly brought under ERISA § 502(a)(3), I nonetheless conclude that Count Five is untimely.

State law supplies the limitations period for a claim under ERISA § 502(a)(3) that alleges a defendant failed to act in accordance with a plan. *Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 132-33 (2d Cir. 2021). Hill responds that the federal catchall limitations period in 28 U.S.C. § 1658 applies to Count Five. Pl.'s Mem. 23-24. Hill contends that the Internal Revenue Code regulations incorporated by reference into the Plans were enacted after 1990. *Id.*

I am not convinced. At bottom, Hill argues that Defendants violated a condition of the Plans—he does not seek to directly enforce the Internal Revenue Code. And although the Plans guarantee they will be implemented in a manner consistent with the Internal Revenue Code, Count Five is made possible not by the Code but rather by the provisions of the Plans. Because ERISA § 502(a)(3) has permitted a participant, beneficiary, or fiduciary to seek individual relief to remedy violations of a qualifying plan's terms since 1974 and is otherwise silent on the applicable statute of limitations, state law supplies the limitations period.

I would ordinarily apply the most analogous Connecticut statute of limitations. *See, e.g.*, *Conn. General Life Ins. Co.*, 988 F.3d at 132-35 (applying Connecticut statute of limitations for unjust enrichment claims to ERISA § 502(a)(3) claim alleging defendants violated plans). Here, however, the Plans include Delaware choice-of-law provisions. ECF No. 47-3, at 46 ("The Plan shall be construed in accordance with applicable federal law and, to the

16

extent otherwise applicable, the laws of the state of Delaware, subject to any applicable choice of law provision in any contract under which a Component Benefit is maintained or funded.); ECF No. 47-4, at 65 (same).[6] "Contractual choice of law provisions are generally enforceable under . . . federal common law." *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 108 (2d Cir. 2017). Thus, because the Plans include Delaware choice-of-law provisions, I apply the most analogous Delaware statute of limitations. *See Wang Lab'ys, Inc. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir. 1993) (holding that, because "[i]n an ERISA case, we ordinarily borrow the forum state's statute of limitations so long as application of the state statute's time period would not impede effectuation of federal policy . . . [w]here a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair."); *Prabhakar*, 996 F. Supp. 2d at 138 n.20 (observing that courts ordinarily apply the limitations period of the forum designated in an ERISA plan's choice-of-law provision). The Third Circuit has held that Del. Code tit. 10, § 8111, which establishes the limitations period for breach of promise arising out of the employer-employee relationship, is the most analogous statute of limitations for claims under ERISA § 502(a)(1)(B) for denial of benefits. *Syed v. Hercules Inc.*, 214 F.3d 155, 160-61 (3d Cir. 2000) (Alito, J.). Section 8111 was amended in 2023 to provide a two-year statute of limitations. 2023 Del. L. Ch. 20. At the time Hill left XPO in March 2021, § 8111 required claims to be brought within one year of the occurrence of the conduct giving rise to the claim. *See id.*[7]

---

[6] Hill agrees that I may consider the terms and conditions of the Plans, which are attached to Defendants' Motion to Dismiss, because the FAC relies on their terms. Pl.'s Mem. 24 n.11 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[7] Hill does not argue that another Delaware limitation period should govern. But it does not appear that Count Five would be timely under any other Delaware statute of limitations. In *Syed*, 214 F.3d

Even assuming that Delaware law supplies the limitations period, Hill argues that an ERISA claim does not accrue until "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint." Pl.'s Mem. 23 (quoting *Saint-Jean v. Emigrant Mortg. Co.*, 50 F. Supp. 3d 300 (E.D.N.Y. 2014), *aff'd*, 129 F.4th 124 (2d Cir. 2025)). I am not convinced.

"Although state law determines the limitations period, federal law governs the accrual date for a claim under ERISA." *Rappaport v. Guardian Life Ins. Co. of Am.*, No. 1:22-CV-08100 (JLR), 2024 WL 4872736, at \*5 (S.D.N.Y. Nov. 22, 2024) (quoting *Ivanovic v. IBM Pers. Pension Plan*, 47 F. Supp. 3d 163, 167 (E.D.N.Y. 2014)); *see also Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 592 (S.D.N.Y. 2009) (stating that, in applying state-law statutes of limitation to ERISA claims, "court[s] looks to federal common law to determine when the cause of action accrues"). "The statute of limitations in an ERISA action begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 18 (S.D.N.Y. 2019); *accord Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007).

Because the FAC does not allege the date when he received the Plan documents, Hill says it would be improper to dismiss Count Five. Pl.'s Mem. 23-24. But under federal common law, accrual begins on the date the plaintiff detects an injury—not when a plaintiff learns that the injury is cognizable at law, either because it violates a contract or other source of legal

_____

at 160, the Third Circuit also analyzed Del. Code tit. 10 § 8106, which sets a three-year statute of limitations for actions for breach of contract. Even applying § 8106 to Count Five, it would not be timely.

duties and obligations. *See, e.g.*, *Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[W]e have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). The FAC states that Hill was employed by Defendants until March 2021, FAC ¶ 9, and that only regular employees and their dependents enrolled in the Plans must pay the tobacco surcharge, *id.* ¶¶ 2-3. Because the Complaint was filed more than three years after Hill last paid the tobacco surcharge, Count Five is not timely under the one-year statute of limitations supplied by Del. Code tit. 10, § 8111.

Although federal common law recognizes that the statute of limitations can be equitably tolled, it is the plaintiff's burden to establish entitlement to this "extraordinary measure." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004); *see also Perlman v. Gen. Elec.*, No. 22 CIV. 9823 (PAE), 2024 WL 664968, at *4 (S.D.N.Y. Feb. 16, 2024) ("The burden of proving that tolling is appropriate rests on the plaintiff.") (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)), *aff'd*, No. 24-514-CV, 2024 WL 4635235 (2d Cir. Oct. 31, 2024). A plaintiff seeking to establish their entitlement to equitable tolling must ordinarily plead facts in the complaint "alleg[ing] that extraordinary circumstances prevented him from acting in a timely manner." *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. 2015). *See, e.g.*, *Abira Med. Lab'ys, LLC v. Anthem Blue Cross Blue Shield of Connecticut*, No. 3:24-CV-00872 (SVN), 2025 WL 1825425, at *9 (D. Conn. July 2, 2025) (declining to equitably toll claims because "Plaintiff

has not diligently pursued its alleged rights with respect to these 125 Disputed Claims, and there is no basis for finding that equitable tolling should apply"); *Cooper v. Int'l Bus. Machines Corp.*, No. 3:24-CV-656 (VAB), 2024 WL 5010488, at *5-6 (D. Conn. Dec. 6, 2024) (declining to equitably toll claims for denial-of-benefits and breach of fiduciary duty), *reconsid. denied*, 2025 WL 1275880 (D. Conn. May 2, 2025).

Hill does not argue that he is entitled to equitable tolling. *See* Pl.'s Mem. 14 n.5. Nor does Hill argue he should be permitted to amend the complaint a second time to allege facts setting forth the circumstances that prevented him from timely pursuing Count Five. I therefore conclude that Count Five is untimely and dismiss it without leave to amend.

### C.    Sufficiency of Count Three

Count Three is the only claim brought in a representative capacity on behalf of the Plans pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). FAC ¶ 78. Count Three alleges that Defendants breached their fiduciary duty by "assessing and collecting the tobacco surcharges" in violation of the law and in violation of the relevant Plan terms. *Id.* ¶ 73. The FAC posits that Defendants breached their fiduciary duties by applying fees collected from tobacco surcharges in order to "reduce[] their own costs associated with funding their plans and forestalled their own obligations to make contributions thereto." *Id.* The FAC alleges, upon information and belief, that "Defendants' responsibilities with respect to the funding of their plans' claims and administrative expenses . . . equaled the amount by which the claims and administrative expenses exceeded all participant contributions" (including the tobacco surcharges)—and thus Defendants' "collection of the tobacco surcharge funds diminished the amount they had to contribute to the plan, thereby benefiting themselves and harming their plans." *Id.* ¶ 74. Thus, according to the FAC, "[a]s a result of the imposition of the tobacco

surcharges, Defendants enriched themselves at the expense of the plans, thereby resulting in them receiving a windfall." *Id.* ¶ 75.

Defendants argue that Count Three fails to state a claim for three reasons: first, because it is time barred; second, because it does not challenge fiduciary conduct; and third, because it fails to allege an injury to the Plans. Defs.' Mem. 16-20. Finally, Defendants argue that Hill lacks standing to seek prospective injunctive relief on behalf of the Plan because he is no longer employed by Defendants. Defs.' Mem. 18 n.5.

Defendants' argument about the timeliness of Count Three dovetails with their argument about the timeliness of Count Four. *See* Defs.' Mem. 10-12. It fails here for similar reasons: I cannot identify from the FAC when Hill acquired "actual knowledge" of the way in which Defendants assertedly offset their contributions to the Plans. *Sulyma*, 589 U.S. at 184. Because that conduct remains at the core of Hill's allegations concerning Defendants' breach of fiduciary duty, I cannot say from this record that Count Three is untimely. I address Defendants' remaining arguments for dismissal of Count Three below.

### 1.    Fiduciary Function

"In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "Fiduciary functions include, for instance, the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) (citation and internal quotation marks omitted). "Settlor functions, in contrast,

21

include conduct such as establishing, funding, amending, or terminating a plan." *Id.* "ERISA's fiduciary duty requirement simply is not implicated where an employer, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan." *Noel v. Pepsico, Inc.*, No. 24-CV-7516 (CS), 2026 WL 558118, at *13 (S.D.N.Y. Feb. 27, 2026) (citation and internal quotation marks omitted).

Defendants urge me to conclude that Defendants did not act as fiduciaries in creating or implementing an assertedly discriminatory tobacco surcharge program. Defs.' Mem. 18-20. Defendants rely on *Secretary of Labor v. Macy's, Inc.*, No. 1:17-CV-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021), where the district court held that the employer acted as a settlor because the employer's "decision to charge a Tobacco Surcharge for individuals who neither refrained from using tobacco products nor completed a reasonable alternative was a modification of the terms of the Health Plan 'to provide less generous benefits' to those employees." *Id.* at *18 (quoting *Pegram*, 530 U.S. at 225). Hill distinguishes *Macy's* on the grounds that the FAC also alleges Defendants acted as fiduciaries of Plan assets when they used the tobacco surcharge revenue to offset their own required contributions to the Plans. Pl.'s Mem. 27. Defendants' reply brief does not respond to the argument that a plan sponsor acts as a fiduciary when it improperly withholds contributions that are due to a plan. *See* Defs.' Reply. Other courts have described similar allegations as "sufficient, if barely," to state a claim of fiduciary conduct. *See Waggoner*, 24-cv-2217, ECF No. 27, at 66. I similarly conclude that the allegation that Defendants impermissibly withheld contributions to the Plans plausibly supports the inference that Defendants acted as fiduciaries.

22

### 2. Injury to the Plans

"Section 502(a)(2) provides for suits to enforce the liability-creating provisions of § 409, concerning breaches of fiduciary duties that harm plans." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 251 (2008). But "the Supreme Court concluded that Section 502(a)(2) claims can only be brought to pursue relief on behalf of a plan, and cannot be used as a mechanism to seek individual equitable relief for losses arising from the mismanagement of a plan." *Cedeno v. Sasson*, 100 F.4th 386, 397 (2d Cir. 2024) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 (1985). "Section 502(a)(2) provides no remedy for individual injuries distinct from plan injuries." *Id.* at 399. As noted, ERISA § 502(a)(3)—unlike § 502(a)(2)—permits "individual equitable relief." *Duke*, 167 F.4th at 28.

Defendants do not dispute that Count Three seeks relief on behalf of the Plans. *See* Defs.' Mem. Rather, Defendants say that Count Three fails to state a claim because it does not allege an injury to the Plans in anything other than wholly conclusory terms. *Id*. at 17-18.

The Second Circuit has stated that "a plaintiff suing for breach of fiduciary duty under § 502(a)(2) may seek recovery only for injury done to the wronged plan." *Cooper v. Ruane Cunniff & Goldfarb Inc*., 990 F.3d 173, 180 (2d Cir. 2021). I agree with Defendants that the FAC's statement that "Defendants are liable to make good to the plan all losses to their group health plans resulting from their breaches," FAC ¶ 77, is too conclusory standing alone to adequately allege losses to the plan.

However, Hill contends that the FAC establishes an injury to the Plans insofar as the FAC alleges upon information and belief that Defendants applied the tobacco surcharge to offset their own obligations to the Plans. FAC ¶ 73. Hill focuses on two separate acts: (1) Defendants' decision to "assess[] and collect[] the tobacco surcharges" in violation of the law,

*id.* ¶ 73, and (2) the fact that Defendants applied the tobacco surcharges to reduce their own contributions to the Plans, "thereby benefiting themselves and harming their plans," *id.* ¶ 74.[8]

I am not persuaded that Defendants injured the Plans by imposing the tobacco surcharges. Indeed, it would seem that this action was neutral or beneficial to the Plans insofar as it caused the Plans to obtain additional revenue, and Hill has not presented any other argument for why imposing the tobacco surcharge harmed the Plans. *See Chirinian v. Travelers Companies, Inc.*, No. 24-CV-3956 (LMP/DTS), 2025 WL 2147271, at *12 (D. Minn. July 29, 2025) (rejecting argument that imposing unlawful surcharge injured the Plan because "Travelers' alleged breach left the value of the Plan's assets in the same position had the breach not occurred").

Hill's second contention—that Defendants injured the Plans by reducing their own contributions to the Plans—presents a closer question. The parties' briefing does not engage in depth with the FAC's allegation that Defendants applied tobacco surcharge revenue to offset their own required contributions to the Plans. *See* Defs.' Mem. 17-18; Pl.'s Mem. 25-26. No circuit court has addressed this issue, and the few district court opinions to confront similar allegations have diverged. As another district court recently stated, "[t]he law in this area is unsettled." *Waggoner v. The Carle Found.*, No. 24-CV-2217 (C.D. Ill. Sept. 15, 2025), ECF No. 27, at 68. *Compare Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882, 903

---

[8] Hill also maintains that ERISA § 502(a)(2) does not require him to allege "a loss to the plan" to state a claim. Rather, Hill maintains, "the relevant statute authorizes plans to not only recover losses, but also 'to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary.'" Pl.'s Mem. 25 (quoting 18 U.S.C. § 1109). I need not reach this argument because I conclude that Hill has adequately alleged injury to the Plans, at least at this stage of the case, by asserting that Defendants applied the tobacco surcharges to reduce their own contributions to the Plans.

(E.D. Va. 2025) (finding that similar allegations supported an inference of plan injury); *Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*, No. 2:24-CV-02749-TLP-TMP, 2025 WL 2779899, at \*20 (W.D. Tenn. Sept. 26, 2025) (stating that allegation that defendant "withheld funds from the Plan and thus harmed it" adequately alleged injury to the plan); *Mehlberg v. Compass Grp. USA, Inc.*, No. 24-CV-04179-SRB, 2025 WL 1260700, at \*7 (W.D. Mo. Apr. 15, 2025) (finding that defendant injured plan because defendant "kept the illegal tobacco surcharge to offset its own contributions, when those funds should have been deposited into the Plan"); *with Noel v. Pepsico, Inc.*, No. 24-CV-7516 (CS), 2026 WL 558118, at \*14 (S.D.N.Y. Feb. 27, 2026) ("Even accepting that Defendants used the surcharge funds to offset their own contributions, it is unclear how this conduct could have caused injury to the Plan, as opposed to the individuals from whom the surcharge was collected. The amount contributed to the Plan would seemingly be the same, regardless of whether the contributions were coming from Defendants or tobacco-using participants."); *Williams v. Bally's Mgmt. Grp., LLC*, -- F. Supp. 3d --, No. CV 1:25-00147-MSM-PAS, 2025 WL 3078747, at \*6  (D.R.I. Nov. 4, 2025) (concluding that allegation that fiduciary "pocketed the tobacco surcharge to the detriment of the Plan" failed to support the inference of any plan-specific injury); *Fisher v. GardaWorld Cash Serv. Inc.*, No. 3:24-CV-00837-KDB-DCK, 2025 WL 2484271, at \*7-8 (W.D.N.C. Aug. 28, 2025) ("Offsetting its own costs, without more, does not mean the Plan suffered any harm."); *Macy's*, 2021 WL 5359769, at \*8 (holding that, even assuming employer reduced its funding to offset tobacco surcharge process, "the net impact on the Plan of Defendants' alleged violations of their fiduciary duties was neutral, rather than giving rise to a plausible inference of losses to the Plan resulting from the Defendants' conduct" and "[t]hus, as a matter of law,

any underpayment of benefits by Defendants does not in itself represent losses to the Plan allowing suit under § 1132(a)(2)").

I conclude that the FAC plausibly alleges an injury to the Plans insofar as it contends that the Plans should have profited from the tobacco surcharges and instead only broke even. *See Mehlberg*, 2025 WL 1260700, at *7. I recognize that some courts have declined to treat unpaid employer contributions as plan assets. *Cf. Fisher*, 2025 WL 2484271, at *7 (analyzing the instances when "unpaid employer contributions are, in fact, Plan assets"); *Noel*, 2026 WL 558118, at *15 (same). Here, however, Defendants do not explain why—in the context of these Plans—the unpaid employer contributions should not be considered assets to which the Plans were entitled.

Because this action will in any case proceed to discovery, and in light of the substantial legal and factual uncertainty regarding Count Three, I resolve that prudence dictates that Count Three should proceed to discovery. The parties are free to argue at a later stage of the case whether Count Three nonetheless fails to establish an injury to the Plans. *See, e.g.*, *Waggoner*, ECF No. 27, at 68.

### 3. Standing to Seek Prospective Injunctive Relief

One of the forms of relief sought in the FAC is a "permanent injunction against Defendants prohibiting them from collecting tobacco surcharge funds." FAC 21. In a footnote, Defendants contend that, as Hill is no longer employed by Defendants, Hill lacks Article III standing to "seek any prospective injunctive relief, either on behalf of himself or the Plans." Defs.' Mem. 18 n.5. Hill responds that, because he brings Count Three in a representational capacity, "whether Plaintiff himself could pursue forward-looking injunctive relief is beside the point." Pl.'s Mem. 27 n.13.

I disagree. Although ERISA § 502(a)(2) authorizes an individual to seek relief on behalf of a plan, the Supreme Court has made clear that "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). Consequently, a plaintiff pursuing prospective injunctive relief under ERISA "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Noel*, 2026 WL 558118, at *8 (citation and internal quotation marks omitted); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2016) (stating that a plaintiff lacks standing to pursue prospective relief "where they are unable to establish a 'real or immediate threat' of injury") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)).

Hill is no longer employed by Defendants. FAC ¶ 9. So although he may seek injunctive *retroactive* relief on behalf of himself and the Plans, Hill does not have standing to seek prospective injunctive relief because Defendants' ongoing management of the Plans does not pose a "real or immediate threat" to his interests and because prospective relief would not redress his past injuries. *See, e.g.*, *Garthwait v. Eversource Energy Co.*, No. 3:20-CV-00902 (JCH), 2022 WL 1657469, at *6 (D. Conn. May 25, 2022) (concluding that former enrollees lacked standing to seek prospective relief because "the defendants' future management of the Plan does not pose a 'real or immediate threat' to the plaintiffs"); *Noel*, 2026 WL 558118, at *8 (concluding that plaintiffs failed to demonstrate likelihood of future injury because complaint "contains no allegations suggesting that Plaintiffs will disclose tobacco use or decline to participate in the Ex Program moving forward"); *Chirinian*, 2025 WL 2147271, at

27

*4 (plaintiff lacked standing because, "as a former plan participant who will no longer be subject to the Plan's requirements, Chirinian cannot allege a real or immediate threat of ongoing or future harm by Travelers' conduct") (citations and internal quotation marks omitted).

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss is granted as to Count Five and denied as to Counts One, Two, Three, and Four. Defendants shall answer the First Amended Complaint on or before April 24, 2026. On or before May 1, 2026, the parties shall meet and confer pursuant to Local Rule 26(f) to propose further deadlines for this action. The parties shall file their Local Rule 26(f) report on or before May 15, 2026.

**SO ORDERED.**

New Haven, Connecticut
March 31, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

28